IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ODALYS ROSA SANTOS,<br><br>Plaintiffs,<br><br>v.<br><br>PUERTO RICO CHILDREN'S HOSPITAL, et. al.,<br><br>Defendants. | CIVIL NO.: 11-1539 (MEL) |

**OPINION AND ORDER**

**I.   PROCEDURAL HISTORY**

On June 8, 2011, plaintiff Odalys Rosa Santos ("Rosa" or "plaintiff") filed a complaint against defendants the Puerto Rico Children's Hospital ("the hospital"), Dr. Samuel A. Fernández López ("Fernández"), and Fernando Lugo Fabres ("Lugo"), alleging that Fernández, an orthopedic physician, and Lugo, an anesthesiologist, sexually harassed plaintiff, who was employed by the hospital. Docket No. 1. The complaint asserts, against all three defendants, hostile work environment and quid pro quo sexual harassment claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and Puerto Rico Law 17 of 1988 ("Law 17"), 29 L.P.R.A. § 155, as well as retaliation claims under both of those laws. Docket No. 1, ¶¶ 19-27.

Subsequently, all three defendants filed respective motions to dismiss. Docket Nos. 22, 23, 43. At an initial scheduling conference on May 17, 2012, the court granted the motions filed by Lugo and Fernández. See Docket No. 62. Initially, the court also granted the hospital's motion, but later withdrew this ruling upon reconsideration. At a subsequent conference on May 21, 2012, the motion was denied as to its first argument, which asserted that the hospital could not be held liable for the actions of Lugo and Fernández because they were not its employees,

but rather, respectively, an independent contractor and a doctor with staff privileges. See Docket No. 43. The hospital also argued that: (1) plaintiff's allegations were not severe or pervasive enough to constitute a hostile work environment claim; and (2) even if the allegations were sufficient, the hospital would not be liable under the Faragher/Ellerth doctrine. The court held in abeyance the decision on these latter two arguments and now, for the reasons set forth below, grants in part and denies in part the motion to dismiss.

## II.   FACTUAL ALLEGATIONS

The following allegations are drawn from plaintiff's complaint. Docket No. 1. The factual allegations are taken as true for the purpose of the pending motion.

At all times relevant to the complaint, Fernández worked at the hospital as an orthopedist, Lugo worked there as an anesthesiologist, and Rosa was an employee of the hospital, although the complaint does not indicate her position or the type of work that she did. Docket No. 1, ¶¶ 4-7. The complaint describes various incidents of alleged harassment that occurred between March 16, 2010 and June 29, 2010.

On March 16, 2010 Fernández approached Rosa while she was working and told her he liked her a lot. Docket No. 1, ¶ 9. He then followed her around making comments, including inviting Rosa "to go out to a motel to have sex." Id. This occurred in front of others and against Rosa's will. Id. Rosa subsequently complained to the hospital's personnel director about unwanted sexual advances on March 19, 2010. Docket No. 1, ¶ 15.

In May of 2010, while Rosa was working, Fernández approached her and asked why she was so "old fashioned." Id. at ¶ 10. He told her that the only thing he wanted was "a piece of that," referring to her genitalia, and that there was "nothing wrong with that because it is going to produce pleasure at the moment." Id. He continued, asking her to let him pick her up "so we

can go to bed with you and please myself with your body because you always smell so good and I am wondering if is going to taste good as well." Id.

On May 4, 2010, while Rosa was helping to perform an x-ray and Fernández tried to cover himself from the radiation by standing behind Rosa and telling her "sexual jokes" while trying to smell her neck and also rubbing his genitals against her back. Id. at ¶ 12.  When Rosa asked him to stop, he replied, "[W]hat[, o]h my god, you don't even let yourself give you a touch." Id.

On May 18, 2010, while Rosa was making a report for a patient, Fernández walked by very close to her and, when she turned her back, spanked her left buttock so hard that it caused her pain. Id. at ¶ 11. In response, Rosa yelled at him, "Hey! What are you doing?" Id. Rosa also alleges that on June 15, 2010, Lugo approached her in the washing area and rubbed her from behind, "putting his genitalia in [her] butt." Id. at ¶ 13.

After Rosa denounced these incidents to an unspecified individual or individuals, several high-ranking hospital employees ceased talking with her during work. Id. at ¶ 14. They assigned her different working schedules, with which she could not comply. Id. They also failed to inform her about schedule changes during holidays, did not let her take lunch breaks, forced her to use physical force beyond her capacity, and gave her duties that were not in her job description. Id. Rosa resigned from her position with the hospital on June 29, 2010, an act which she claims was compelled by the circumstances previously described. Id. at ¶ 14, 16.

### III.  STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must limit its focus to the allegations of the complaint. Litton Indus., Inc. v. Colón, 587 F.2d 70, 74 (1st Cir. 1978). The inquiry is whether the allegations, accepted as true, show "a plausible entitlement" to the relief requested. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559

(2007).  To avoid dismissal, plaintiff must "set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory."  Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).

Determining whether a complaint makes out a plausible entitlement to relief involves two steps.  See Ocasio Hernández v. Fortuño Burset, 640 F.3d 1, 11-12 (1st Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).  First, the court should separate a complaint's factual allegations from any "legal conclusions couched as fact or threadbare recitals of the elements of a cause of action," and disregard the latter.  Id. at 12 (quoting Iqbal, 556 U.S. at 678) (internal quotations omitted).  The court then treats non-conclusory factual allegations as true, "even if seemingly incredible."  Id.  Second, the court must determine if the factual content, taken as a whole, admits of "the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).  Only if it does will the complaint survive a motion to dismiss under Rule 12(b)(6).

## IV.  ANALYSIS

### A.  Hostile Work Environment Claim

In her complaint, plaintiff alleges that the actions of the hospital, Fernández, and Lugo created a hostile work environment in violation of Title VII.  Docket No. 1, ¶¶ 23-24.  Defendant argues in its motion to dismiss that the facts alleged by plaintiff are insufficient to state a hostile work environment claim.  Docket No. 43, at 9.

The protection against discrimination in employment provided by Title VII has extended to protection against an abusive or hostile work environment.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115-16 (2002).  An abusive work environment is created "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

working environment." Id. (internal quotations omitted) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993)); see also Collazo v. Nicholson, 535 F.3d 41, 44-45 (1st Cir. 2008); Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006); Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006); Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005). To sustain a hostile work environment claim, a plaintiff must prove:

> (1) that he is a member of a protected class; (2) that he was subjected to unwelcome sexual or racial harassment; (3) that the harassment was based upon sex or race; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually or racially objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Douglas v. J.C. Penney Co., Inc., 474 F.3d 10, 15 (1st Cir. 2007) (internal quotations omitted).

Defendant contends that plaintiff's claim fails to rise to the level of a hostile work environment, because the facts alleged in the complaint, even if accepted as true, are not so severe or pervasive as to constitute an alteration of the conditions of plaintiff's employment. Determining whether the conduct is sufficiently severe or pervasive is a highly factual and contextual question. In Harris, the Supreme Court noted that the test for proving a hostile work environment "is not, and by its nature cannot be, . . . mathematically precise." 510 U.S. at 22. To determine whether an environment is sufficiently "hostile" or "abusive," a court must examine the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. The conduct must be "extreme" or "humiliating," or must have "unreasonably interfered with [plaintiff's] ability to work." Prescott v. Higgins, 538 F.3d 32, 42 (1st Cir. 2008). At one end of the spectrum, "[s]imple teasing, offhand comments, and isolated incidents" would not constitute

a hostile work environment. Faragher v. City of Boca Ratón, 524 U.S. 775, 788 (1998) (internal quotations omitted) (quoting Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 82 (1998)); see also Alberti v. Univ. of P.R., Civil No. 08-1484 (DRD), 2012 WL 2355579, at *8 (D.P.R. June 21, 2012) (holding that "isolated and stray remarks" that plaintiff found offensive were not a consistent pattern undertaken with the intent to cause harm). At the other end, "[s]evere or pervasive sexual remarks, innuendoes, ridicule, and intimidation … may support a jury verdict finding a hostile work environment." Figueroa Garcia v. Lilly Del Caribe, Inc., 490 F. Supp. 2d 193, 204-05 (D.P.R. 2007).

For example, in Figueroa Garcia, the plaintiff presented evidence at the summary judgment stage of "numerous, sexually charged incidents, some humiliating and one involving unwanted and explicitly sexual physical contact with an intimate body part … and sexually suggestive comments directly to her two or three times per week." Id. at 205. The court determined that this evidence was enough for plaintiff to take her case to the jury. Id. Here, with respect to Fernández, the complaint alleges four sexually charged incidents in a three-month period, consisting of sexual comments on three of those occasions and two instances of physical contact with an intimate body part. As to Lugo, the complaint alleges conclusorily that he used "hostile and sexual language" on "many occasions," but it also states one incident on June 15, 2010, of uninvited contact between intimate body parts. Docket No. 1, ¶ 13. This particular incident is sufficient to establish that Lugo's alleged conduct was sexually charged and humiliating.

The incidents that plaintiff alleges are comparable to, if not worse than, the conduct in numerous cases where a motion to dismiss or a motion for summary judgment has been denied. See, e.g., Colondres v. Potter, CIV. 11-1171 JAF, 2012 WL 1069257, at *1-*2 (D.P.R. Mar. 29,

2012) (denying motion to dismiss where supervisor "lustfully stared at [plaintiff's] body, made comments to Plaintiff about her physique that indicated her desire to have sex with Plaintiff, made sexual insinuations to Plaintiff, invited Plaintiff to go out, and displayed jealousy regarding Plaintiff's relationships with her ex-husband, female coworkers, and clients at work"); Garcia v. Sprint PCS Caribe, 841 F. Supp. 2d 538, 557 (D.P.R. 2012) (denying motion for summary judgment where plaintiff alleged that supervisor made four comments over a three-month period); Guzmán v. Macy's Retail Holdings, Inc., 09 CIV.4472 (PGG), 2010 WL 1222044 (S.D.N.Y. Mar. 29, 2010) ("A female plaintiff's allegation that a male co-worker rubbed his genitals against her body, and then repeated that action after the plaintiff asked him to stop has adequately alleged sexual harassment, particularly for purposes of a motion to dismiss.") (internal citation omitted); Walter v. Westdeutscher Rundfunk, 03 CIV.5676 LAK JCF, 2004 WL 1052776, at *5-*6 (S.D.N.Y. May 11, 2004) (a single act of plaintiff's supervisor "'rubbing his genitals' in his office" was sufficient to withstand a motion to dismiss), report and recommendation adopted in part, 03 CIV. 5676 (LAK), 2004 WL 1238382 (S.D.N.Y. June 2, 2004) (adopting the recommendation of dismissal of motion to dismiss); Wahlstrom v. Metro-N. Commuter R. Co., 89 F. Supp. 2d 506, 511, 521 (S.D.N.Y. 2000) (denying motion for summary judgment with respect to a co-worker who "wrapped his arms around [plaintiff], grabbed her in a 'bear hug,' made a grunting sound, and slapped her left buttock three times" because of the severity of the single incident); Yaba v. Roosevelt, 961 F. Supp. 611, 620 (S.D.N.Y. 1997) (holding one incident of "sexual touching and harassment" to be sufficient to deny a motion to dismiss).  Thus, plaintiff has alleged facts that, if accepted as true, are sufficiently severe or pervasive as to establish a plausible entitlement to relief.

B.  **The Hospital's Vicarious Liability**

The hospital bases its contention that it cannot be held liable for Fernández's and Lugo's conduct on two grounds. The first, as previously mentioned, is that Title VII does not hold employers liable for the actions of non-employees. As discussed, however, the court rejected this argument because a plaintiff's employer may indeed be liable for a non-employee's acts of harassment under Title VII if it "knows or should have known of the conduct and fails to take immediate and appropriate corrective action." Hernández v. Miranda Vélez, Civil No. 92-2701 (JAF), 1994 WL 394855, at *8 (D.P.R. July 20, 1994) (quoting 29 C.F.R. § 1604.11(e)), aff'd, 132 F.3d 848 (1st Cir. 1998); see also Docket No. 62, at 3 (citing Rivera v. MVM, Inc., Civil No. 09-2114 (DRD), 2011 WL 5075662, at *7 (D.P.R. Aug. 1, 2011) (holding that plaintiff's employer could be liable for subcontractor's conduct if employer knew or should have known of such conduct and failed to take action)); Plaza Torres v. Rey, 376 F. Supp. 2d 171, 182-84 (D.P.R. 2005); Acevedo Vargas v. Colón, 68 F. Supp. 2d 80, 87-88 (D.P.R. 1999); Dunn v. Washington County Hosp., 429 F.3d 689, 690-92 (7th Cir. 2005) (holding that a hospital may be liable for acts of sexual harassment by a doctor who has staff privileges if the hospital knew or should have known of such acts and "did not act reasonably to equalize working conditions once it had knowledge").

Defendant's next argument is that it should not be held liable under the Faragher/Ellerth doctrine. The Faragher/Ellerth doctrine sets forth the standard of vicarious employer liability when the alleged harasser is the plaintiff's "supervisor with immediate (or successively higher) authority over the employee." Faragher v. City of Boca Ratón, 524 U.S. 775, 807 (1998). The affirmative defense is available when an employer maintains an anti-harassment policy and complaint procedure of which the employee is aware, and the employee unreasonably fails to utilize that procedure. Faragher, 524 U.S. at 808; Burlington Industries, Inc. v. Ellerth, 524 U.S.

8

742 (1998).  There are two elements to establishing a Faragher/Ellerth defense.  "First, the employer must show that it 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior.'"  Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 20 (1st Cir. 2002) (quoting Ellerth, 524 U.S. at 765).  Usually, this element is met with "proof that the employer 'had promulgated an antiharassment policy with [a] complaint procedure.'"  Id. (quoting Ellerth, 524 U.S. at 765).  "Second, the employer must establish 'that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'"  Id. at 20-21 (quoting Ellerth, 524 U.S. at 765).  This element is usually met with "proof that the plaintiff unreasonably ignored an established complaint procedure." Id. at 21.

      Defendant's assertion of this defense is procedurally premature.  To prove the first element, an employer must demonstrate that it has such an antiharassment policy with a complaint procedure.  At the motion to dismiss stage, only the facts alleged in the complaint may be considered.  Litton Indus., Inc. v. Colón, 587 F.2d 70, 74 (1st Cir. 1978).  Here, plaintiff makes no mention of an antiharassment policy at the hospital.  Defendant would be unable to establish this defense at this stage of the proceedings.  The Faragher/Ellerth defense is more appropriate at the summary judgment stage.

      Furthermore, the Faragher/Ellerth defense is inapplicable in this case.  As discussed at the beginning of this section, the standard for employer liability here is a negligence standard; in other words, plaintiff will prevail if she can prove that the hospital knew or should have known about the harassment.  Because this defense only applies where the harassment is committed by the plaintiff's supervisor,[1] it is not available where, as here, the alleged harasser is a third-party

---

[1] Here, the complaint does not allege that Fernández and Lugo were plaintiff's superiors.  The complaint does not even indicate what position plaintiff held at the hospital.

9

over which defendant has some degree of control.  See Godoy v. Maplehurst Bakeries, 747 F. Supp. 2d 298, 312 (D.P.R. 2010) (noting that the Faragher/Ellerth defense is unavailable where alleged harasser is plaintiff's co-worker; rather, "knew or should have known and failed to take appropriate action" was the applicable standard); see also Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330-31 n.7 (4th Cir. 2012) (noting that respondeat superior liability under Title VII is subject to the Faragher/Ellerth defense and contrasting respondeat superior with negligence liability).

Even if the Faragher/Ellerth defense were applicable, defendant would fail to meet the second element.  Contrary to what defendant claims in its motion, plaintiff does allege that she complained to the personnel director about Fernández's advances.  Docket No. 1, ¶ 15.  While it is not clear whether this was the exact procedure provided for in defendant's anti-discrimination policy, if the allegations of the complaint are taken as true—as they must at this stage of the proceedings—it is certainly not the case, as defendant says, that "Rosa did not complain about any improper conduct on Fernández or Lugo's behalf, or anyone else."[2]  Docket No. 43, at 16. Particularly considering that the hospital personnel director told plaintiff that "they were going to deal with it," plaintiff's actions are sufficient to defeat the second element of the Faragher/Ellerth defense.  Docket No. 1, ¶ 15.  It is not true that "an employee only acts reasonably if the employee follows the [employer's] formal procedure, and … [the employer] is entitled to ignore any notice of harassment that is outside of the procedure." Agusty-Reyes v. Dept. of Educ. of Puerto Rico, 601 F.3d 45, 56 (1st Cir. 2010) (noting that "a reasonable jury could find … that …

---

[2] Defendant may be correct that plaintiff did not inform the hospital about *Lugo's* advances until the EEOC complaint on January 4, 2011.  The only non-conclusory allegation in the complaint concerning Lugo occurred on June 15, 2010.  Docket No. 1, ¶ 13.  Plaintiff complained to the hospital personnel director about unwanted sexual advances on March 19, 2010.  Id. at ¶ 15.  Nevertheless, the complaint sufficiently alleges that she complained about *Fernández's* advances, as one incident with Fernández occurred three days before the meeting with the personnel director.  Id. at ¶¶ 9, 15.

10

[plaintiff] had exercised reasonable care" where she complained to her supervisor's supervisor and filed a union grievance, rather than filing a formal internal complaint) (internal quotation omitted).  Therefore, defendant would not qualify for the Faragher/Ellerth defense even if it were applicable.

      **C.**      **Quid Pro Quo Claim**

Another cause of action that plaintiff sets forth is quid pro quo sexual harassment under Title VII.  Under quid pro quo sexual harassment, "'an *employee* or *supervisor* uses his or her *superior position* to extract sexual favors from a subordinate employee, and if denied those favors, retaliates by taking action adversely affecting the subordinate's employment.'"  Valentin-Almeyda v. Municipality Of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006) (italics added) (quoting O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).  "Quid pro quo harassment, in which 'a supervisor uses employer processes to punish a subordinate for refusing to comply with sexual demands,' is actionable because it involves explicit and tangible alterations in the terms or conditions of employment."  Perez-Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 26 (1st Cir. 2011) (internal citation omitted) (quoting Hernandez–Loring v. Universidad Metropolitana, 233 F.3d 49, 52 (1st Cir. 2000)).  The facts alleged in the complaint are not sufficient to support a claim of quid pro quo harassment.

First, in the complaint, plaintiff does not allege that Fernández or Lugo is her superior.  She does not even state what her position at the hospital is, nor does she indicate whether she ever had to report to or follow the instruction of Fernández or Lugo.  In four out of five of the allegations involving Fernández or Lugo, plaintiff was working and was approached by Fernández or Lugo independently of her work.  In the incident on May 4, 2010, plaintiff and Fernández were working together; specifically, "[plaintiff] was helping to perform a CT Scan."

11

Docket No. 1, ¶ 12. But this allegation also fails to demonstrate a supervisor-subordinate relationship contemplated by Title VII.

Furthermore, plaintiff alleges no instance where Fernández, Lugo, or any other person used employer processes to punish her for denying sexual favors. "The harassing supervisor must be the one who orders the tangible employment action or, at the very least, must be otherwise substantially responsible for the action." Agusty-Reyes v. Dept. of Educ. of Puerto Rico, 601 F.3d 45, 53 (1st Cir. 2010) (internal quotation omitted) (quoting Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 44 (1st Cir. 2003). Plaintiff does allege that the hospital itself "took reprisals," but she does not allege at any point in the complaint that Fernández or Lugo took advantage of his position at the hospital to punish her. Docket No. 1, ¶ 14. The only allegations with respect to Fernández or Lugo involved solicitations of sexual favors, inappropriate joking, and inappropriate touching, not any punishment or threat of punishment for refusing to comply with their sexual demands.

For these reasons, plaintiff fails to meet a quid pro quo cause of action under the facts articulated in her complaint.

### D.     Retaliation Claim

Defendant does not address plaintiff's retaliation claim in its motion to dismiss. This alone would be sufficient for this court to deny the motion with respect to the retaliation claim. Furthermore, the facts in the complaint are sufficient to sustain plaintiff's prima facie burden for retaliation.

Plaintiff can establish a prima facie case for retaliation by showing: (1) she engaged in protected conduct; (2) she suffered a materially adverse action, which caused her harm "sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination"; and (3) a causal connection between the two. Mariani-Colon v. Dep't of

Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 223 (1st Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

While an EEOC complaint would constitute protected conduct ordinarily, plaintiff filed her EEOC complaint (January 4, 2011) after the end of her employment (June 29, 2010). Nevertheless, her discussion with the hospital personnel director on March 19, 2010, was protected conduct for Title VII retaliation purposes. "'The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination.'" Rivera Maldonado v. Hosp. Alejandro Otero Lopez, 614 F. Supp. 2d 181, 198 (D.P.R. 2009) (quoting Fantini v. Salem State College, 557 F.3d 22, 31 (1st Cir. 2009)). "'Protected conduct includes not only the filing of administrative complaints, … , but also complaining to one's supervisors.'" Id. (quoting Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006)). Thus, complaining to the personnel director certainly qualifies as protected conduct.

Second, although the actions taken by the hospital did not qualify as "explicit and tangible alterations in the terms or conditions of employment" for purposes of quid pro quo harassment, Perez-Cordero, 656 F.3d at 26, it does qualify as a "materially adverse" action which "might have dissuaded a reasonable worker from making or supporting a charge of discrimination," Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotations omitted). These two standards differ; the retaliation standard, "unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (internal quotation omitted) (quoting Burlington Northern, 548 U.S. at 64), cert. denied, 131 S. Ct. 978 (U.S. 2011); see also Billings v. Town of Grafton, 515 F.3d 39, 54 (1st Cir. 2008) ("[C]onduct need not relate to the terms or conditions of employment to give rise to a retaliation claim."). Thus, plaintiff

need only show that the employer's action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68 (internal quotation omitted). For example, plaintiff allegedly was given working schedules she could not comply with, assigned physical labor beyond her capability, not informed about changes in schedules, and assigned duties not in her job description. Docket No. 1, ¶ 14. Even though these actions "'might not have made a dramatic impact on plaintiff's job,'" they made it substantially more difficult or even impossible for plaintiff to complete her job satisfactorily; thus, this series of actions by the hospital, considered together, certainly might have dissuaded a reasonable worker from speaking with the personnel director. Bibiloni Del Valle v. Puerto Rico, 661 F. Supp. 2d 155, 169 (D.P.R. 2009) (quoting Billings v. Town of Grafton, 515 F.3d 39, 54 (1st Cir. 2008)).

Furthermore, an escalation of harassment on the heels of complaints about harassment is sufficiently adverse action. See Pérez-Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 31 (1st Cir. 2011). According to the facts alleged in the complaint, plaintiff had one incident where Fernández solicited a sexual favor, reported it three days later, and the remainder of the specific incidents involving Fernández and Lugo occurred afterwards. This set of allegations is sufficient to support a claim at the motion to dismiss stage that the sexual harassment escalated in response to plaintiff's complaint. See id.

With respect to the third prong, temporal proximity can be a major factor in determining whether there is a causal connection between protected activity and adverse action for purposes of a prima facie retaliation case. See DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008) ("[T]emporal proximity alone can suffice to meet the relatively light burden of establishing a prima facie case of retaliation.") (internal quotation omitted); Mariani Colón v. Dep't of

14

Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007) (finding two-month interval sufficient to meet prima facie burden); Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004) (finding one-month interval sufficient to meet prima facie burden). A reasonable reading of paragraphs 14 and 15 of the complaint would indicate that the alleged reprisals took place between March 19, 2010, and June 29, 2010, a range of time over three months. It is unclear from the complaint whether these incidents occurred closer to plaintiff's internal complaint or closer to her resignation. At this time, plaintiff has alleged sufficient facts to meet her prima facie burden at the motion to dismiss stage. The issue of temporal proximity between protected activity and materially adverse action in this case can be readdressed at the summary judgment stage. Therefore, defendant's motion to dismiss is denied with respect to the claim of retaliation.

### E. Supplemental Jurisdiction over Puerto Rico Law 17 Claims

Plaintiff makes each of her three claims—hostile work environment, quid pro quo harassment, and retaliation—under Puerto Rico Law 17 as well. Because only the quid pro quo harassment claim is dismissed under Title VII at this stage, plaintiff's Law 17 claim is dismissed only to the extent that it pertains to a quid pro quo harassment claim. See Ruiz v. Caribbean Restaurants, Inc., 54 F. Supp. 2d 97, 120 (D.P.R. 1999) (noting that Law 17 causes of action are "nearly identical to the EEOC's guidelines for Title VII sex discrimination causes of action, that is quid pro quo and hostile work environment").

### V. CONCLUSION

Based on the foregoing analysis, the Court hereby **GRANTS IN PART** and **DENIES IN PART** defendant's Motion to Dismiss (Docket No. 43). The Court **DENIES** defendants' motion with respect to plaintiff's Title VII and Puerto Rico Law 17 causes of action that state hostile work environment and retaliation claims. The Court, however, grants defendants' motion with

respect to plaintiff's quid pro quo sexual harassment claim under Title VII and Puerto Rico Law 17, and thus **DISMISSES** both causes of action **WITH PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of September, 2012.

s/Marcos E. López
U.S. Magistrate Judge
